## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**THE LAW OFFICE OF WILLIAM J.
SCOTT, P.A., On Behalf of itself and
All other similarly situated.**
      **Plaintiff,**

**v.**                  **Case No.: 3:22-cv-1188-HES-JBT**

**SCANSTAT TECHNOLOGIES, LLC,**
      **Defendant.**
_____/

## O R D E R

This cause is before this Court on "Plaintiff's Motion to Remand" (Dkt. 12) and "Defendant ScanSTAT Technologies, LLC's Response in Opposition to Plaintiff's Motion to Remand" (Dkt. 25).

Plaintiff, The Law Office of William J. Scott, P.A., filed its Class Action Complaint on September 9, 2022, in state circuit court against Defendant, ScanSTAT Technologies, LLC (Dkt. 1-1). Plaintiff alleges that he was overcharged for copies of medical records in violation of Florida law and so brings three counts against ScanSTAT for breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act § 501.201 ("FDUPTA"), and negligence. Plaintiff seeks damages, injunctive relief, and attorney's fees and costs under FDUPTA. On November 2, 2022, Defendant, ScanSTAT removed this action asserting that the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provided federal subject matter jurisdiction over the lawsuit (Dkt. 1).

Plaintiff filed a Motion to Remand (Dkt. 12).

A federal court has jurisdiction under CAFA if: (1) the proposed class contains at least 100 members; (2) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant; and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2), (5)(b). Plaintiff does not dispute that minimal diversity is met. Plaintiff asserts this Court does not have jurisdiction because Defendant cannot prove by a preponderance of the evidence that the proposed class contains at least 100 members and the amount in controversy exceeds $5 million.

## I.   Standard of Review

CAFA's provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014) (quoting S. Rep. No. 109–14, at 43 (2005)). The "amount-in-controversy allegation of a defendant seeking federal-court adjudication should be accepted" unless the plaintiff contests defendant's allegations. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014). Plaintiff contests Defendant's allegations, so this Court must decide "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

When determining whether Defendant satisfied this burden, the court

2

first considers "if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001). If not, then the court may consider "evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014).

## II.  Analysis

### a. Number of Class Members

Defendant asserts there are at least 100 members based on Plaintiff's allegations in the Complaint. Plaintiff contends that on information and belief, "class numbers are in thousands" (Dkt. 3, ¶35). But a court need not "blindly credit estimates in pleadings that are based on 'information and belief' in the absence of any other evidence or indication that they are accurate." *Calta v. Vision Solar FL, LLC*, No. 8:22-CV-897-CEH-MRM, 2022 WL 17730114, at *5 (M.D. Fla. Dec. 16, 2022).

In considering evidence beyond the Complaint, ScanSTAT in its Declaration attests 50,000 entities made medical records requests within a five-year period. Of these requests over 20% were charged a delivery fee that Plaintiff alleges is not authorized by Florida law (Dkt. 25-1, ¶¶ 7, 9). Thus, by preponderance of the evidence, this Court finds that the proposed class

contains at least 100 members.[1] *See e.g.*, *Pretka*, 608 F.3d at 770-72 (accepting declaration as sufficient evidence that defendant met CAFA's amount-in-controversy and numerosity requirements); *Heretick v. Publix Super Mkts., Inc.*, 841 F. Supp. 2d 1247 (M.D. Fla. 2012).

b. Amount of Controversy

Plaintiff claims that ScanSTAT overcharged for the reproduction of medical records and seeks (1) damages; (2) recovery of attorneys' fees under statute; and (3) an injunction "prohibiting ScanSTAT from charging the unlawful fees in the future." (Dkt. 3, ¶ 8).

The Complaint does not have a demand for a specific amount of damages, and so "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka*, 608 F.3d at 752. When considering the amount-in-controversy, courts determine "what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka*, 608 F.3d at 751 (quoting *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)).

ScanSTAT alleges that considering the aggregate damages, attorney

---

[1] Plaintiff states it can move to certify a class in Florida state court for as little as 25 people, however, "federal jurisdiction under the Class Action Fairness Act does not depend on certification." *Wright Trans., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271 (11th Cir. 2016) (quoting *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010)).

fees, and value of the injunction, there is more than $5 million in controversy. This Court will address each in turn.

      i.    Monetary Damages

ScanSTAT contends that the amount of controversy is met because it extrapolates Plaintiff's overcharge of $267.75 is typical among the class, and so multiples $267.75 by the proposed class members (20,000). This extrapolation is not reasonable because "the typicality element of a class action, by itself, does not allow us to infer that the amounts of the named plaintiffs' claims are similar to those of other class members." *Pretka*, 608 F.3d at 769; *Calta*, 2022 WL 17730114, at *5 (remanding because defendant provided no evidence to assume that the "named plaintiff's claims are representative of the average class member.").

ScanSTAT offers no evidence to assume that the charges to Plaintiff represents that of the average entity. In its sworn declaration, ScanSTAT attests it (1) collected $500,000 in delivery fees; (2) that of the 750,000 medical requests 15% were charged a dollar release fee ($112,500); and (3) ScanSTAT charged more than 100 entities more than $.25 per page after the twenty-fifth page. This Court cannot determine the cumulative amount charged after the twenty-fifth page. Because this Court will not engage in impermissible speculation, the expected damages that can be calculated is $612,500.00 (delivery fees + release fees).

ii.    Attorney's Fees

Plaintiff requests attorney fees and court costs under FDUPTA. Fla. Stat. §§ 501.2105–.211 (2022). FDUPTA authorizes a court to award attorneys' fees to the prevailing party. *Id.* "When a statute authorizes recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000).

Defendant contends that its potential and aggregate attorneys' fees would be at least $70,000 pretrial and at least $400,000 through trial and appeals given the size of the proposed class – tens of thousands. But attorneys' fees under FDUPTA cannot be aggregated because they do not constitute "a single title or right in which [the class members] have a common and undivided interest." *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1082 (11th Cir. 2000) (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). Under FDUPTA the amount of claimed attorney fees "must be divided out among the total number of class members for amount in controversy purposes." *Id.* at 1083.

There is also a circuit split on whether the court considers attorney fees at the time of removal or through the entry of final judgment in determining the amount in controversy. *Shelly v. Target Corp.*, 446 F. Supp. 3d 1011, 1013 (S.D. Fla. 2019) (discussing the split between the Seventh and Ninth Circuit). *See generally Wood, Atter & Wolf, P.A. v. Star Med, LLC*, No. 3:16-CV-1393-J-

6

39JBT, 2017 WL 7311875, at *4 (M.D. Fla. Sept. 21, 2017) (collecting cases)[2], *report and recommendation adopted*, No. 3:16-CV-1393-J-39JBT, 2018 WL 699218 (M.D. Fla. Jan. 18, 2018).

Even assuming the potential attorney fees could be $400,000, it must be divided pro rata among the potential class members in the tens of thousands. Thus, the projected attorney fees add little to satisfy the amount in controversy requirement.

          iii.    Value of Injunction

ScanSTAT claims the value of the injunction alone satisfies the amount in controversy requirement. Under CAFA, courts "aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if [injunctive or] declaratory relief were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014). In valuing claims for injunctive relief, the Eleventh Circuit adopts the plaintiff's viewpoint approach. *Id.* at 1315–16. The monetary value is measured by "the benefit that would flow to *the plaintiff* if the relief he is seeking were granted.'" *Id.* at 1316 (emphasis added) (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir.2000)). It is irrelevant what the monetary effects are on

---

[2] ScanSTAT relies on *Wood, Atter & Wolf, P.A* in support that it has satisfied the amount of controversy requirement. But this order denied a motion for attorney's fees after the court remanded. 2017 WL 7311875, at *1.

the defendant's business practice if an injunction is granted. *Cohen*, 204 F.3d at 1079 n. 8.

ScanSTAT in its declaration attests that if a permanent injunction is obtained, it estimates a total reduction the fees would exceed 5 million in less than 10 years (Dkt. 25-1, ¶ 13). Such a position ignores that the value of the injunctive relief must be the value to Plaintiff – not to ScanSTAT. While the court can draw reasonable inferences and deductions drawn from evidence, it cannot engage in substantial speculation as to the value of the injunction to the potential class members. *E.g.*, *McLawhorn v. GEICO Indem. Co.*, No. 8:17-CV-156-T-33AEP, 2017 WL 1277744, at *4 (M.D. Fla. Apr. 6, 2017) (remanding because the value of the declaration was "abstract and speculative" as "[t]he particular circumstances of each class member will determine what further relief they might seek and whether they are entitled to further relief at all"); *but cf. Argentine v. Bank of Am. Corp.*, No. 8:15-cv-957-T-26MAP, 2015 WL 3793868, at *3 (M.D. Fla. June 18, 2015) (finding that the amount in controversy was met because the injunctive relief sought included "redemption value for points already accumulated but not yet redeemed" and would "result in liability in excess of $5 million for the almost 150,000 cardholders").

## III. Conclusion

While the proposed class contains at least 100 members, ScanSTAT failed to establish, by a preponderance of evidence, the amount in controversy

exceeds $5 million, so this Court lacksjurisdiction under CAFA.

Accordingly, it is **ORDERED**:

1.     "Plaintiff's Motion to Remand" (Dkt. 12) is **GRANTED**;

2.     This case is **REMANDED** to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, Case No. 2022-CA-5262; and

3.     The Clerk is directed to terminate all pending motions and close this file.

**DONE AND ORDERED** at Jacksonville, Florida, this 28 day of April, 2023.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Matthew T. Peterson, Esq.
Brian W. Warwick, Esq.
Janet R. Varnell, Esq.
Andrew R. Schindler, Esq.
Chantel Christine Wonder, Esq.
Duval County Clerk of Court